## HAVRON v. SEQUACHEE VALLEY ELECTRIC CO-OP.—204 S. W. (2d) 823.

En Banc at Jackson.   July 26, 1947.

Petition for Certiorari denied by Supreme Court, October 3, 1947.

John S. Carriger and S. B. Strang, both of Chattanooga, and J. D. McClarney, of Jasper, for plaintiff.

A. A. Kelly, of South Pittsburg, for defendant.

HOWELL, J. The plaintiff, S. L. Havron, sued the defendant Sequachee Valley Electric Service for $20,400 in damages for the loss of his dwelling house and contents by fire on April 19, 1945. The declaration alleged that the fire was caused by the negligence of the defendant in that it carelessly and insecurely fastened its outside wiring bringing electricity to the premises of the plaintiff in such a manner as to permit electric power to escape and come into contact with plaintiff's dwelling so as to cause a fire which destroyed the dwelling and household goods of plaintiff and members of his family; that the defendant negligently installed and failed to

properly maintain its wiring to the dwelling, failed to maintain proper inspection of the wiring, had notice of the defective condition of the wiring and failed to correct it although this notice had been given it prior to the fire.

The defendant pleaded not guilty, that it was a non profit cooperative organization owned by its members and that plaintiff was a member and had no right to maintain his suit, that the fire was caused by the negligence of the plaintiff in failing to have his house properly wired and that it was a government agency discharging a governmental function and therefore entitled to immunity from actions of this kind.

The case was tried four times and on the last trial there was a verdict of the jury for plaintiff for $8,000. After its motion for a new trial was overruled by the trial Judge, the defendant perfected an appeal in error to this Court and has assigned errors.

It is insisted for the defendant that there is no evidence to support the verdict of the jury, that the jury arbitrarily disregarded some of the evidence, that the Court erred in not granting defendant's motion for a directed verdict in its favor, and that the Court erred in not sustaining defendant's plea that plaintiff was a member of the non profit cooperative which was preforming a governmental function and therefore he could not maintain his suit.

The record contains over 900 pages of testimony and many exhibits and there was testimony of competent witnesses to the effect that the wiring on the outside of the house belonging to the defendant was defective and in an unsafe condition, that this wiring had previously given trouble and been repaired by employees of the defendant, that this repair work had been carelessly done and wires were left crossed, that plaintiff's electric

stove did not operate properly and an electrician was sent for who reported that the trouble was outside the house and that notice of this had been given the defendant and nothing was done toward relieving the situation.

Expert witnesses were introduced who testified that the condition of the outside wiring could have caused the fire. A witness testified that the fire started outside of the house "around the lattice work and the screen wire was red hot". This lattice work and the screen wire were on the porch of the house.

■ We cannot usurp the functions of the jury and there was evidence that the fire started outside the house and that wires leading to the house were in a defective condition. Of course mere suspicion or conjectures as to what caused the fire is not sufficient to take the case to the jury. Negligence must be proven. We cannot say that in this case there is a total failure of proof of negligence or evidence from which a reasonable inference may be drawn that the negligence proven had causal connection with the fire. We are of the opinion that there was sufficient evidence to support the verdict of the jury and the Court properly overruled the defendant's motion for peremptory instructions.

■ Electricity has been described as being potentially the most dangerous of the utilities commonly used, but, while dangers incident to the presence of high-voltage electric current are great, still the distributor of current will not be held liable without negligence. See Tennessee Electric Power Company v. Sims, 21 Tenn. App. 233, 108 S. W. (2d) 801.

■ In the case of Tennessee Cent. Ry. Co. v. McCown, Tenn. App., 188 S. W. (2d) 931 in an opinion by Hickerson, Judge, this Court said:

"Upon the consideration of a motion made by defendant for directed verdict plaintiff is entitled to all legitimate inferences of fact favorable to him which may be reasonably drawn from the evidence tending to support the cause of action stated in his declaration,' Prudential Ins. Co. v. Davis, 18 Tenn. App. 413, 429, 78 S. W. (2d) 358, 368; and 'the trial judge should take the most favorable view of the evidence supporting the rights asserted by the party against whom the motion is made, and discard all countervailing evidence,' Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S. W. 984, 985.

"Facts may be proved by circumstances in civil cases where the circumstances are such as usually attend the fact to be proved, and tend to exclude contrary hypotheses. It is not necessary for such circumstances to exclude all other hypotheses. It is sufficient if one theory is more probable than other theories from the circumstances proved; and it is a question for the jury to decide which theory or hypotheses is the more probable. The question is determined upon a preponderance of the evidence which is submitted by proving the circumstances. Knights of Pythias v. Steele, 107 Tenn. 1, 63 S. W. 1126; Marquet v. Aetna [Life] Ins. Co., 128 Tenn. 213, 159 S. W. 733, L. R. A. 1915B, 749, Ann. Cas. 1915B, 677; Gulf Refining Co. et al. v. Frazier, 19 Tenn. App. 76, 83 S. W. (2d) 285; Nashville Ry. & Light Co. v. Harrison, 5 Tenn. App. 22, 34, 36.''

█ In the case of Adamant Stone & Roofing Co. v. Vaughn, 7 Tenn. App. 170, on page 178, Faw, P. J. said:

"It is insisted for defendant that the verdict cannot be sustained except by basing 'an inference upon an inference or a presumption upon a presumption,' and that this is not permissible. The rule which defendant thus

seeks to invoke is sound and well settled, and has been frequently applied in Tennessee cases; among others, Railroad Co. v. Lindamood, 111 Tenn. 457, 472, 78 S. W. 99; De Glopper v. Nashville Ry. & Light Co., 123 Tenn. 633, 645, 134 S. W. 609; Louisville & N. Railroad Co. v. Jackson, 3 Tenn. App. 463, 471.

"But the jury may find a fact from circumstantial evidence and the fact thus found may be used as the basis of a presumption is passing on other evidence, without contravening the rule that an inference cannot be based upon an inference.

"In section 363-364 of the second (1926) edition of Jones on Evidence there is an illuminating discussion of the so-called 'rule' here in question, and the view of the author, supported by numerous adjudged cases cited in the footnotes, is that 'once the facts are established from which a presumption or inference logically flows or legally arises, whether such basic facts are established by circumstantial evidence or by direct testimony, it is the province of the jury to deduce the presumption or inference.' "

In this case the negligence of the defendant in not properly installing the outside wires and in not correcting the trouble when it was called to its attention has been proven and it has been also proven that such conditions, under given circumstances, could cause a fire. Numerous circumstances appear to show that these conditions did cause the fire at plaintiff's home. No inference on an inference is necessary. It was for the jury to consider just how the fire started and whether or not it was caused by the defective condition of the outside wires leading to the house of the plaintiff. These matters were properly submitted to the jury by the trial Judge.

█ It is insisted for the defendant that it is immune from liability to plaintiff as he is a member of defendant, a nonprofit cooperative organization, and that it cannot be held liable as it is a governmental agency discharging a governmental function and thereby entitled to immunity.

We cannot agree with this contention.

We find nothing in the Act authorizing the organization of Rural Electrification Authorities to indicate that it was the intention of the Legislature to create a corporation which should be immune from liability for the negligence of its officers and employees and thus be permitted to allow dangerous and defective conditions to exist in connection with its own facilities for the distribution of electric power without any responsibility in damages for injuries to persons or property caused by reason of such negligence. On the contrary the By Laws, Article VIII under the heading "Revenues and Receipt" provide for the distribution of revenues in excess of the amount necessary for the payment of a number of items including "Insurance", thus indicating that insurance was anticipated. Exhibit No. 7 to the testimony of W. L. Whitworth is a copy of a liability policy issued to the defendant by the United States Fidelity and Guaranty Company insuring it against liability for property damage in the amount of $10,000 and this policy was in force from August 31, 1944 to August 31, 1945.

In connection with the immunity claim of the defendant the case of Tri-State Fair v. Rowton, 140 Tenn. 304, 204 S. W. 761, 763, L. R. A. 1918F, 657, is in point. In that case the Supreme Court said:

"The corporate purpose of the defendant was not to make money for its members, but it was to make money for itself to be used in carrying forward and enlarging

its enterprise. This could only be done by inducing the public to patronize its exhibitions, and when members of the public attend they are entitled to demand the exercise of ordinary care on the part of the association in the keeping safe of such grandstands as its officers may see fit to provide. If the rule of immunity were applied in the circumstances here appearing, a corporation created for public welfare might become one for public detriment, should its negligence go to the point where a grandstand was permitted to become so insecure as to fall causing the deaths of a large number of spectators.

"The income of the defendant, especially from admission fees, should be held to accrue subject to the risks of the negligent management of the corporate agencies which affect the patrons who furnish the lifeblood of the institution in the payment of those fees."

The subject of the liability of corporations for the general welfare for torts is fully discussed by Felts, J. in the case of Vanderbilt University v. Henderson, 23 Tenn. App. 135, 127 S. W. (2d) 284, and in that case it is held that the rule that charitable institutions are not liable for the negligence of its agents extends only to protection of the institution's trust property from diversion from charitable purposes to the satisfaction of tort liability and that liability insurance carried by such institution is not trust property and may be appropriated to the satisfaction of tort liability.

See also Anderson v. Armstrong, 180 Tenn. 56, 171 S. W. (2d) 401, and many other cases.

In the recent case of Nashville Electric Service v. W. T. Luna, decided in March 1947, in an opinion by Hickerson, J. this Court held that in the distribution of electric power the Nashville Electric Service was acting in

its corporate or proprietary capacity and not in a governmental capacity.

The subject of whether or not a city was acting in its proprietary or governmental capacity in the construction and maintenance of electric wiring for the lighting of streets is discussed by the Supreme Court in the case of Saulman v. City of Nashville, 131 Tenn. 427, 175 S. W. 532, L. R. A. 1915E, 316, Ann. Cas. 1916C, 1254, and in that case it was held that the city was engaged in performing a private function and was liable for the negligent construction and maintenance of a heavily charged electric wire which caused an injury to a lineman employed by a telephone Company.

We see no good reason why the doctrine of governmental immunity should apply to an electric cooperative. To do so would only encourage negligence on the part of its officers and employees, while to hold them responsible for their negligence would instill vigilance and caution to see that installation of wiring was properly done and defective conditions remedied.

We find no errors in the judgment of the Trial Court.

The assignments of error are overrruled and the judgment affirmed. A judgment will be entered here in favor of the plaintiff and against the defendant for $8,000 and interest from February 20, 1947 and the costs of the cause.

Affirmed.

Felts and Hickerson, JJ., concur.