(No. 30957.

Agnes R. Moore, Appellant, *vs.* William J. Moyle et al.—(Bradley Polytechnic Institute, Appellee.)

*Opinion filed March 22, 1950—Rehearing denied May 15, 1950.*

Wilson and Crampton, JJ., dissenting.

DAVID F. MATCHETT, JR., and HUGH M. MATCHETT, of Chicago, and WILLIAM L. EAGLETON, of Peoria, for appellant.

HEYL, ROYSTER & VOELKER, (CLARENCE W. HEYL, of counsel,) both of Peoria, for appellee.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Appellant, Agnes R. Moore, plaintiff below, brought an action in the circuit court of Peoria County, against the defendants, William J. Moyle, B. G. Bramlage, and Bradley Polytechnic Institute, hereinafter referred to as Bradley, to recover damages for personal injuries.

In 1940, plaintiff was a student at Bradley and the individual defendants were instructors in its department of physical education. Bradley purchased a trapeze to be used in a college circus and on May 2, 1940, while appellant was practicing on the trapeze in preparation for the circus, it collapsed, allowing her to fall some twenty-five feet to a hardwood floor, where she suffered the injuries out of which this case arose.

Plaintiff filed an amended complaint consisting of six counts. As amended, counts 1 and 3 alleged the circumstances of the fall and rest on the doctrine of *res ipsa loquitur*. Counts 2 and 4 charge specific acts of negligence, and counts 5 and 6, sound in contract. All counts, as amended, pray judgment against Bradley and the individual defendants, and all counts allege that Bradley is fully insured against the risk involved here, and that Bradley has other nontrust funds from which judgment could be satisfied; and, further, alleges that judgment, if obtained, would

not impair or diminish any funds held by Bradley in trust for charitable purposes. Motions to dismiss were filed, Bradley averring it is a charitable corporation, and therefore not liable for the torts of its agents. The trial court entered an order striking all counts as to Bradley and all except count 2 as to the individual defendants. Later, appellant filed her motion to vacate the order in so far as it dismissed the complaint against Bradley. This motion was denied and appellant elected to stand on her pleadings. Judgment was then entered dismissing the suit as to Bradley. From that judgment appellant came here on direct appeal contending constitutional questions were involved. This court found no fairly debatable constitutional questions were presented and ruled on in the trial court, so as to give this court jurisdiction on direct appeal, and that the question presented was whether the judgment in the trial court was correct. (*Moore* v. *Moyle,* 399 Ill. 230.) The cause was accordingly transferred to the Appellate Court for the Second District, where the judgment of dismissal was affirmed. The case is now before us again on a certificate of importance.

The first question to be determined is whether the judgment below was a final, appealable order. Appellee contends the action below was not finally disposed of on the merits because still pending against the individual defendants. There is no merit to that contention in the situation here. Where a judgment determines the ultimate rights of the parties with respect to distinct matters having no bearing on other matters not finally disposed of, the judgment is final and appealable. (*Roddy* v. *Armitage-Hamlin Corp.* 401 Ill. 605.) It is conceded that the judgment here was a final determination of the controversy between Bradley and appellant on its merits. The judgment clearly has no bearing on the issues still in controversy between appellant and the individual defendants, and it constitutes a final appealable order.

Bradley Polytechnic Institute, now Bradley University, is a charitable institution organized in 1896, under the laws of this State as a corporation, not for profit. The crucial question thus presented is whether charitable corporations are exempt from liability for the torts of their agents so as to justify the dismissal below as to Bradley Polytechnic Institute. The controversy revolves around the holding in *Parks* v. *Northwestern University,* 218 Ill. 381, where it was announced that the doctrine of *respondeat superior* does not extend to charitable institutions for the reasons, first, that if this liability were admitted, the trust fund might be wholly destroyed and diverted from the purpose for which it was given, thus thwarting the donor's intent, as the result of negligence for which he was in nowise responsible; second, that since the trustees cannot divert the funds by their direct act from the purposes for which they were donated, such funds cannot be indirectly diverted by the tortious or negligent acts of the managers of the funds or their agents or employees.

It is conceded that Bradley Polytechnic Institute is a charitable corporation and that the doctrine of the *Parks case* is applicable to the instant case if the exemption from liability propounded in that decision is absolute. Appellant contends the exemption is not absolute. To sustain this contention appellant cites the case of *Marabia* v. *Mary Thompson Hospital,* 309 Ill. 147, where a default judgment was entered against a charitable hospital for tort. There, the hospital moved to set aside the judgment, alleging the charitable nature of its organization, and that the plaintiff had no cause of action of which the court could take jurisdiction. The trial court sustained the motion and the Appellate Court affirmed. On appeal to this court the order setting aside the judgment was reversed on the ground that a charitable corporation is under no disability to be sued and, if sued, must present its defenses if it wishes to contest the action. Appellee admits that this case fairly holds

that the defense of immunity may be waived, but contends that where that defense is interposed it is absolute.

An analysis of the decisions in Illinois reveals that where plaintiffs have sought an unqualified recovery in tort against a charitable corporation, this and the Appellate Courts have uniformly followed the doctrine of the *Parks case*. (*Hogan* v. *Chicago Lying-In Hospital*, 335 Ill. 42; *Lenahen* v. *Ancilla Domini Sisters*, 331 Ill. App. 27; *Wattman* v. *St. Lukes Hospital Ass'n*, 314 Ill. App. 244; *Moretick* v. *South Chicago Community Hospital*, 297 Ill. App. 488.) However, where it appears from the pleadings that the charitable corporation is covered in its liability by insurance, the Appellate Courts have differed in their conclusions as to the extent of the exemption. In *Piper* v. *Epstein*, 326 Ill. App. 400, where it was alleged the defendant charity was protected by liability insurance, a judgment against the charity was reversed, the court holding the existence of the insurance did not enlarge the liability. The court there held the immunity of charitable corporations from liability based on negligence to be absolute. To the same effect is *Myers* v. *Y. M. C. A.* 316 Ill. App. 400.

But in the case of *Wendt* v. *Servite Fathers*, 332 Ill. App. 618, where the defendant charity was protected by liability insurance, the court held that the immunity granted by *Parks* v. *Northwestern University*, 218 Ill. 381, was not absolute, that the defense could be waived, and that, where there was liability insurance from which tort liability could be collected without impairment of the trust funds of the charity, the defense of immunity was not available.

None of the three last-mentioned cases came to this court and the effect of insurance as nontrust funds of the charity on the doctrine of the *Parks case* has never been passed on by this court.

An examination of the *Parks case* reveals that the sole object of the doctrine there announced was to protect the trust funds of charities from depletion through the tortious

conduct of their employees and agents. The only subsequent case in which the court passed squarely on the doctrine was *Hogan* v. *Chicago Lying-In Hospital,* 335 Ill. 42. In that case the court did not enlarge upon the doctrine, nor was there any insurance or other nontrust fund of the charity involved. The only effect of that case was to reaffirm the doctrine of the *Parks case.* We must, therefore, first determine whether the exemption granted to charities in Illinois is absolute and the solution of that question would seem to rest solely in the decisions of this court.

The holding in the *Parks case* clearly exempts the trust funds of a charity from any liability for the torts of its agents and employees. However, the immunity granted does not impose a disability to be sued in tort upon the charity and may be waived. (*Marabia* v. *Mary Thompson Hospital,* 309 Ill. 147.) The only logical construction would seem to be that liability does exist, but the doctrine of immunity is available as a complete defense of the trust funds against depletion by suits in tort. It is hard to reconcile the concept of absolute immunity with a power to create liability by waiver. Such a conclusion would, in effect, place it within the power of charities to confer or withhold jurisdiction of the courts to hear cases of this kind. That question was presented in the *Marabia case* and the court squarely held that jurisdiction was not dependent upon the waiver of the defense of immunity. That case further upheld a judgment capable of unqualified enforcement against the assets of the charity, on the basis that charitable immunity constituted no more than a defense, unavailing unless presented. The *Parks case* seems to have provided a defense, only, and did not destroy the right of action.

The next inquiry would seem to be the extent of the defense granted. The decisions in the *Parks* and the *Chicago Lying-In Hospital cases* clearly extend the immunity to all funds held in trust for the charitable purposes of the

charity, but in no case has the question of whether nontrust funds of the charity are protected been presented to this court. There is nothing in the *Parks case* which indicates that there was either intention or reason to so extend the doctrine of exemption. This question, when presented to our Appellate Courts, has raised a conflict.

. In *Piper* v. *Epstein,* 326 Ill. App. 400, the court extended the doctrine so as to preclude recovery in tort from the proceeds of liability insurance. The basis of decision was that no liability in tort exists in our law as to charitable corporations and that no judgment can be based on such liability. Clearly, that decision proceeds further than is justified by the decision in the *Parks case.* In *Wendt* v. *Servite Fathers,* 332 Ill. App. 618, after an exhaustive review of the development of the doctrine of immunity, the court found that immunity does not extend to the proceeds of an insurance policy and affirmed a judgment against a charitable institution where it affirmatively appeared that the judgment's enforcement would not impair or diminish the trust funds of the charity.

Appellee cites many cases from other jurisdictions to support its contention that the procuring of liability insurance or the existence of nontrust fund assets does not waive or qualify the immunity of a charitable corporation from liability in tort. *Greatrex* v. *Evangelical Deaconess Hospital,* 261 Mich. 327, 246 N.W. 137; *Enman* v. *Trustees of Boston University,* 270 Mass. 299, 170 N.E. 43; *Slidekum* v. *Animal Rescue League of Pittsburg,* 353 Pa. 408, 45 Atl. 2d 59; *Cristini* v. *Griffin Hospital,* 134 Conn. 282, 57 Atl. 2d; *William's Admx.* v. *Church Home for Females,* 223 Ky. 335, 3 S.W. 2d 753.

Appellant cites the case of *O'Connor* v. *Boulder Colorado Sanitarium Ass'n,* 105 Colo. 259, 96 Pac. 2d 835, where the court noted that decisions from jurisdictions which reject modification of the doctrine of immunity, where the charity is protected by insurance, are based on

an absolute denial of liability. In that case, the pleadings disclosed the existence of protective insurance, and the court held that while the trust funds of the charity were exempt from judgment so as to prevent prosecution of an action calculated to deplete them, the exemption did not extend to cases where no depletion of the trust funds would result.

In *Vanderbilt University* v. *Henderson,* 23 Tenn. App. 135, the court, quoting from *McLeod* v. *St. Thomas Hospital,* 170 Tenn. 423, 95 S.W. 2d 917, appraised the meaning of the doctrine of immunity of charitable corporations in tort, and said, "Upon consideration of the cases dealing with the question, and reflecting upon the true principle involved, we think it fairly may be said that the exemption and protection afforded to a charitable institution is not immunity from suit, not nonliability for a tort, but that the protection actually given is to the trust funds themselves." The court then held that a charitable institution is liable in tort, but that its trust property may not be taken to satisfy a judgment based on tort liability, and that insurance, not being trust property, may be taken to satisfy the judgment. In *Anderson* v. *Armstrong,* 180 Tenn. 56, 171 S.W. 2d 401, it was held that an action in tort might be prosecuted to judgment against a charitable institution, but that the judgment was limited to execution against non-trust funds.

It is apparent that the doctrine of the *Parks case* had for its sole object the protection of trust funds. It seems clear that liability was not destroyed by that decision but only abated to the extent and for the reasons set out, otherwise it would be hard to reconcile the holding in *Marabia* v. *Mary Thompson Hospital,* 309 Ill. 147, that a judgment based on tort against a charitable institution is valid where the defense of immunity was not interposed.

Appellant further urges total repudiation, contending that the trend of decisions is to reject the doctrine on the

ground that it is contrary to reason and justice, and unnecessary. This argument is fully developed in the principal case offered in support of this contention. (*President and Trustees of Georgetown College* v. *Hughes,* 130 Fed. 2d 810.) There, the doctrine was rejected in whole for reasons which might be persuasive in a court not committed to the doctrine of immunity. However meritorious the reasons offered for rejection there, that case is not conclusive of the trend of decisions. In 1938 the Supreme Court of Arizona, in a case of first impression, adopted the doctrine of exemption. (*Southern Methodist Hospital and Sanatorium* v. *Wilson,* 45 Ariz. 507, 46 Pac. 2d 118.) While there is a wide divergence of opinion as to the extent and basis for the doctrine elsewhere, it remains that the majority of American courts hold that the doctrine is sound in principle. It is pertinent to note, as appellees point out, that this court, in the *Parks case,* considered whether the doctrine of exemption should be wholly rejected and, upon examination of the leading case supporting such rejection, (*Glavin* v. *Rhode Island Hospital,* 12 R.I. 411,) expressly refused to follow it. In *Hogan* v. *Chicago Lying-In Hospital,* 335 Ill. 42, that refusal was affirmed.

As to the contention that this court should wholly repudiate the holding in the *Parks case,* it is apparent that the decision there is in harmony with the weight of authority in this country, was based upon adequate reasons of public policy and principles governing trust funds and has been firmly adopted in Illinois after full consideration of the contrary rule. No compelling reason is shown for abandonment of the rule now.

Appellee strenuously argues that the doctrine of the *Parks case* is *stare decisis* in Illinois. It seems sufficient answer to say that the question of whether nontrust funds of a charitable corporation are exempt from tort liability is here for the first time. We do not feel we are here overruling or changing the *Parks case,* but, instead, are properly

extending the rule there announced. It is necessary to review the effect of the decision in that case in the light of present-day conditions and modern business practice and procedure. Times have changed, and are now changing, in the business, social, economic and legal worlds. It is fitting therefore, that the decision of the *Parks case,* handed down 44 years ago, should be re-examined in the light of modern concepts. Simply stated, the decision in the *Parks case* is merely that recovery is denied on the grounds of necessity for the protection of trust funds.

In the amended complaint the plaintiff alleges, among other things, that the defendant, Bradley Polytechnic Institute, is fully insured against loss or damage sustained by reason of any judgment against it for damages and that the funds held in trust by it for charitable purposes will not be impaired or diminished directly or indirectly by the maintaining of the action. Extending the rule as announced in the *Parks case,* it would seem that no violence is done to the decision there by allowing recovery, provided that trust funds or trust property are not subjected to the payment of any judgment obtained for tort liability. It is argued that this would give rise to a situation which would create liability only in the event the charitable institutions were insured, and it is suggested that liability is predicated upon the absence or presence of liability insurance. It is apparent that such is not the case, due to the fact that the question of insurance in no way affects the liability of the institution, but would only go to the question of the manner of collecting any judgment which might be obtained, without interfering with, or subjecting the trust funds or trust-held property to, the judgment. The question as to whether or not the institution is insured in no way affects its liability any more than whether a charitable institution holding private nontrust property or funds would affect its liability. These questions would only be of importance at

the proper time, when the question arose as to the collection of any judgment out of nontrust property or assets. It is suggested that recovery placed upon this basis would limit the person injured to recovery from charitable institutions protected by liability insurance or institutions which might hold nontrust property and deny recovery to an injured person against a charitable institution not insured and one which held only trust funds and trust property. In a similar way, the same condition exists as to individuals. Judgments may be obtained, but the question of collection of the judgment is a different matter. One judgment debtor might be the owner of an unlimited amount of assets subject to execution, while the other might have nothing above the legal exemption. This is frequently the case. We are of the opinion that the exemption or immunity which has been afforded a charitable institution should go no further than to protect its trust funds from being taken to satisfy its liability for the tortious acts of its agents or servants.

As was said in the case of *McLeod* v. *St. Thomas Hospital,* 170 Tenn. 423, 95 S.W. 2d 917, "* * * we think it fairly may be said that the exemption and protection afforded to a charitable institution is not immunity from suit, not non-liability for a tort, but that the protection actually given is to the trust funds themselves." A similar rule was announced in *St. Mary's Academy of Sisters* v. *Solomon,* 177 Colo. 463, 23 Pac. 22, 42 A.L.R. 964.

We are of the opinion there is no justification for absolute immunity if the trust is protected, because that has been the reason for the rule of absolute immunity. Reason and justice require an extension of the rule in an attempt to inject some humanitarian principles into the abstract rule of absolute immunity. The law is not static and must follow and conform to changing conditions and new trends in human relations to justify its existence as a servant and

protector of the people and, when necessary, new remedies must be applied where none exist.

From a careful analysis of the many cases, we are of the opinion that the law in Illinois is that the trust funds of charitable corporations are immune from liability for the torts of the corporation's employees and agents. Beyond that, the rule of *respondeat superior* is in effect.

It appears that the trust funds of Bradley will not be impaired or depleted by the prosecution of ·the complaint, and therefore it was error to dismiss it. The judgment, therefore, of the Appellate Court, sustaining the motion to dismiss the complaint as to the appellee, Bradley Polytechnic Institute, is reversed and the cause remanded to the ·circuit court of Peoria County, with directions to set aside the order dismissing the complaint as amended against Bradley, and to proceed in conformity with the views expressed in this opinion.

*Reversed and remanded, with directions.*

MR. JUSTICE CRAMPTON, dissenting:

I cannot concur in the opinion adopted by the court. In the body of the opinion it is stated that the presence or absence of insurance has no bearing upon the question of liability but only upon the collectibility of any judgment which may be rendered. If such is the holding it would seem entirely irrelevant whether the complaint alleges the presence of insurance or is silent on the matter, as in either case the action would proceed to judgment on its merits, the collection of any such judgment being a matter for subsequent determination after the appropriate steps had ·been taken. It would follow, also, that such holding is *contra* to that in *Parks* v. *Northwestern University,* 218 Ill. 381. Regardless of the reasons stated in that case, the decision was not merely that the assets of the university were exempt from execution on the judgment but that plaintiff was barred from recovering the

judgment itself. If, therefore, this court is now holding that the presence of unprotected assets does not affect liability—in other words, that judgment must be rendered on the merits regardless of the charitable nature of the defendant institution—it is difficult to see how the present holding can possibly be reconciled with that of the *Parks case*. Moreover, the question presumably of controlling importance, namely the manner in which a judgment can be collected or enforced, is not before the court in the present state of the record. The issue to be determined is whether defendant is immune from liability, not whether a liability reduced to judgment can be subsequently satisfied from assets held by the institution.

On the other hand, the concluding portion of the majority opinion implies that the complaint must be dismissed if defendant's trust funds will be impaired or depleted by prosecution of the action. If this is the holding, then liability itself, and not merely the collectibility of the judgment, is dependent upon whether the presence of assets having the requisite character and extent appears from the pleadings or from some other source. It is manifest that such a basis for liability would be fraught with innumerable collateral inquiries and uncertainties. Disputes will arise, not only as to the character of particular assets but as to the specific amount of nontrust assets necessary to suspend or abate immunity: questions which must be resolved before the actual amount of the judgment is known.

In my opinion, neither basis for the disposition of this controversy is sound. The primary issue of immunity should be frankly faced and the reasons and justifications which support it should be re-examined in the light of fundamental common-law principles. The fact that this court has in the past adhered to the doctrine of immunity is highly persuasive. But it is not conclusive. Nor does the supposition that the trend of decision in other courts

opposes rejection of the doctrine afford an adequate ground for following a similar course in this court. To reject a proposed rule, however meritorious its basis, for no better reason than that it conflicts with the trend of decisions is to subordinate the judgment of this court to that of tribunals in other jurisdictions. I think the crucial policy of exempting charitable institutions from tort liability is of sufficient gravity to require a further appraisal by this court of the reasons which sustain it. The issue here presented should be resolved upon the merit of those reasons rather than by the adoption of criteria which merely purport to extend or modify the doctrine and which, I believe, can result in little but confusion in the law.

Mr. Justice Wilson, also dissenting.